UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Shala Howard, | ) | C/A No. 4:12-2647-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Coca Cola Bottling Co. Consolidated, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Shala Howard ("Howard" or "Plaintiff"), began working with Coca Cola Bottling Co. Consolidated ("CCBC" or "Defendant") in April 2007. Plaintiff held several positions with CCBC and was the inventory administrator at CCBC's Marion, South Carolina facility when she was terminated on March 28, 2011. Claiming Defendant wrongfully terminated her, Plaintiff exhausted her administrative remedies and brought this suit claiming race and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and race discrimination under 42 U.S.C. § 1981. *See* Compl., ECF No. 1. Defendant disputes Plaintiff's claim and moves for summary judgment. Def. Mot. Summ. J. ("Motion") and exs. thereto, ECF Nos. 29-31. The undersigned conducted a hearing on Defendant's Motion on December 18, 2013, at which Plaintiff and Defendant appeared through counsel. Having considered the parties' briefs and argument, the undersigned submits this Report[1] recommending Defendant's Motion be *granted* and Plaintiff's case be dismissed.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(g), D.S.C.  Because the Motion

I.    Factual Summary

The following facts are either undisputed or are taken in the light most favorable to Plaintiff, to the extent they find support in the record.

Plaintiff began her employment with CCBC as a part-time builder in April 2007. Pl. Dep. 24-25, 27, ECF No. 29-2. After working as a builder, then as a checker, and then as an assistant inventory administrator, Plaintiff most recently worked as the inventory administrator at Defendant's Marion facility until she was terminated in March 2011. Pl. Dep. 13, 27, 29, 31, 34. Plaintiff's regular shift as an inventory administrator was from 4:00 a.m. until noon. Pl. Dep. 33-34. Plaintiff's supervisor in her inventory administrator position was Jimmy Cribb, who is the only person at CCBC she claims discriminated against her by treating her differently than white males. Pl. Dep. 42-43.

A. Plaintiff's Disciplinary History[2]

The Employee Guide contains CCBC's "Corrective Action Policy," which explains that a Corrective Action ("CA") is "imposed for behavior and performance that fails to meet Company standards." ECF No. 30-2 at 29. [3] This policy outlines a four-step progression. *Id.* "The severity

_____

for Summary Judgment is dispositive, this Report and Recommendation is entered for the district judge's consideration.

[2]The parties differ in their accounts of whether Cribb considered Plaintiff's prior disciplinary actions in terminating her. The facts regarding these prior actions are not in dispute.

[3] Defendant's write-up of the facts goes into some detail regarding CCBC policies regarding employment (in Employee Guide and Policy and Procedural Manual). Plaintiff acknowledged receiving these in 2007 and 2008. Pl. Dep. 36-37, exs.D-1, D-2, ECF No. 29-2 at 55, 56. *See* Employee Guide, ECF No. 30-2. Plaintiff raises as a "Factual Issue" that Defendant "failed to provide training" to her as to either of the handbooks. Pl. Mem. 7-8. She also states she did not receive the full 105-page Employee Handbook; rather she received only a "summary" of it. Pl. Mem. 8. ECF No. 39-3. Plaintiff also notes her supervisor testified that he did not recall any training on the discrimination policy, although she provides no deposition citation for this point. Pl. Mem. 8. On Reply, Defendant submits Plaintiff had been provided full versions of these documents. At the hearing on Defendant's Motion, counsel for Plaintiff advised the court that there was an "issue of fact" regarding what Plaintiff had learned. Counsel conceded, however,

of a situation, however, could warrant an acceleration of the process up to and including immediate discharge." *Id.* The policy explains that the "appropriate level of corrective action is determined through consultation between the supervising manager(s) and the Human Resources Representative." *Id.* "Corrective action steps once issued remain active on a rolling 12-month basis." *Id.* When asked how many CAs an employee needed to have before he or she would be terminated, Plaintiff's supervisor testified there he was "not sure if there [was] a specific number[,] but that it depend[s] on what the employee did." Cribb Dep. 20, ECF No. 39-7.

On December 12, 2008, Plaintiff received a Step 1 CA for failing to perform her job duties, which resulted in CCBC's loss of 325 cases of cans. ECF No. 29-2 at 67. On May 29, 2009, Plaintiff received a Step 2 CA for failing to perform her job duties, which related to Plaintiff's failing to include certain information on a company report. *Id.* at 68. The CA noted that Plaintiff had arrived at work late six times within the prior month. Plaintiff acknowledged on the CA that she understood she needed to be on time for work. *Id.* On July 29, 2009, Plaintiff received a Step 3 CA for again violating company attendance policy by arriving late for work seven times in one month. *Id.* at 72. This Step 3 CA indicated Plaintiff was on "Probation." *Id.* [4] The Plan of Improvement indicated Plaintiff was to arrive at work before the scheduled start time, and she wrote on the CA that she would "make sure" she was there on time in the future. *Id.* On January 22, 2010, Plaintiff received another Step 3 CA for violating CCBC's attendance policy by incurring five tardies, leaving early before inventory was posted, and incurring an absence in the month of January 2010. *Id.* at 70. Management again advised Plaintiff that she was to arrive at work before the scheduled start time and that subsequent violations could result

that this factual "issue" had no bearing on her claims, as Plaintiff was aware of the relevant policies.
[4] Cribb testified that an employee would be on "probation" at Step 3 and that probation would last until one of the employee's steps "fell off." Cribb Dep. 22, ECF No. 39-7.

3

in "Continued Corrective Action if needed." *Id.* On September 2, 2010, Plaintiff received a Step 2 CA for violating the Company's attendance policy by arriving late for work six times during the month of August 2010. *Id.* at 71. The September 2, 2010 CA indicated Plaintiff was again on probation and advised her that she "must be at work before the scheduled start time." *Id.* On October 27, 2010, Plaintiff received another Step 3 CA for violating the Company's attendance policy by arriving late for work four times and incurring two absences during the month of October 2010. *Id.* at 72. Management again advised Plaintiff in writing that she was on probation, that management expected her to arrive at work before her scheduled start time, and that further violations could result in "Continued Progressive Corrective Action if needed including Termination." *Id.* In her deposition, Plaintiff indicated she did not take issue with these actions. Pl. Dep. 108, 110-12, 115, ECF No. 29-2.

B.  Events of March 2011 Leading to Plaintiff's Termination

On Monday, March 21, 2011, Plaintiff did not clock-in for work upon arriving at Defendant's facility for her 4:00 a.m.-until-Noon shift. Plaintiff testified that she had forgotten to clock in. Pl. Dep. 83. Plaintiff received an email from Karen Causey, office administrator at the facility, asking her what time she had arrived at work on the morning of March 21. On the morning of March 22, Plaintiff replied that she had arrived at 3:58 a.m. Pl. Dep. 81-83. When asked in deposition, Plaintiff indicated the time on the clock in her car had read 3:58 a.m. Pl. Dep. 82. Plaintiff also received an email from Cribb on March 22, 2011, inquiring what time she had arrived on March 21. Plaintiff responded: "Jimmy [Cribb] at 3:58 but Karen had already fixed it, she had email[ed] me also, thanks." Pl. Dep. 96.[5] In her deposition, Plaintiff was asked

---

[5] The language of the email is taken from the transcript of Plaintiff's deposition as neither party has included copies of the emails between Plaintiff and Causey or Plaintiff and Cribb in the

the following question: "Other than the clock in your car, are you aware of whether it was not 3:58?". Plaintiff responded, "I wasn't sure what time it was because it was dark and it was early in the morning. I was just trying to get in the door, for one thing." Pl. Dep. 103.

Surveillance tape footage indicated Plaintiff arrived at work at 4:04 a.m. ECF No. 31 (DVD including excerpt of taped footage from morning of March 21, 2011); *see* Cribb Dep. 24, ECF No. 31-3.

On March 28, 2011, Plaintiff was terminated for falsifying documents. *See* Corrective Action Form (Mar. 28, 2011), ECF No. 29-2 at 66. Plaintiff testified that she met with Cribb and "Mr. Matthews"[6] for no more than seven minutes on March 28, 2011. Pl. Dep. 103, ECF No. 29-2. During that meeting, Cribb showed Plaintiff a screen that showed a portion of a video of her arriving at work on March 21, 2011. *Id.* at 81. The CA Form provided the following detail regarding Plaintiff's termination:

> Termination – Code of Conduct Violation – Falsifying time card –On 3/21/10 [Plaintiff] did not punch in when arriving to work. When asked she stated she should be clocked in at 358 am. Her start time is 4 am. Upon review of the security system [Plaintiff] did not arrive at work until 404 am which is grounds for termination under the code of conduct.

ECF No. 29-2 at 66. Plaintiff signed the CA form on March 28, 2011, as did Cribb. *Id.* Cribb signed as "Manager" and Victor Parker, a co-manager, signed as Plaintiff's "Supervisor." *Id.*; *see* Cribb Dep. 24, ECF No. 39-7. A Human Resources Manager signed the form on April 6, 2011. ECF No. 29-2 at 66. Cribb testified that he did not consider any of Plaintiff's prior disciplinary actions when he terminated her on March 28, 2011. Cribb Dep. 32 (noting he considered the falsification of the time card only). In response to a question from Plaintiff's counsel, Cribb

---

record. However, no party has raised a question regarding the substance of the emails, nor do they impact the court's recommendation herein.
[6] Although the court has been provided no additional information regarding "Mr. Matthews," his presence at this meeting is not pertinent to the issues before the court.

indicated he did not know whether Plaintiff's misrepresentation of the time she arrived on March 21, 2011 was intentional. Cribb Dep. 24.

## C. EEOC Charge

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 28, 2011. *See* Charge of Discrimination, ECF No. 39-1; Compl. ¶ 14. Plaintiff alleged that Cribb, her white male supervisor, had discharged her for "negligence." She claimed that Cribb treated her "more adverse [sic] than he did similarly situated White male employees[,] called Black employees stupid[,] . . . belittled and downgraded the Black employees[,]" and called a Black male employee 'Monkey'." ECF No. 39-1 at 1. In the EEOC Intake Questionnaire, dated September 19, 2011, Plaintiff indicated she felt she had been discriminated against because she was a "black female and [her] job was taken to be given to a white male." ECF No. 39-2 at 2. She did not identify that white male by name. In addition, Plaintiff submitted to the EEOC that she was "treated unfairly according to rules[,]" when compared to "actions taken against the white male employee." *Id.* In response to the form's query regarding the reasons Plaintiff was given for the acts she considered discriminatory, and who gave those reasons, Plaintiff responded: "Poorly. Belittle, lowgraded, stupidly, negligently as a young[] black female." *Id.* Plaintiff attributed these to Warehouse Manager Cribb. *Id.* Plaintiff identified Jamie Harrison and Donnie Jones, both white males, as persons who were "in the same or similar situation [and] were treated better" than her. *Id.*[7] Plaintiff also indicated Cribb had called two Black males "stupid," and called one a "monkey." *Id.* at 2.[8]

---

[7] The court discusses details regarding comparators identified by Plaintiff within.

[8] Plaintiff testified that Cribb called Furman Ceo, a Black male, "stupid" on Christmas Eve 2009 because Ceo had brought Gatorade, a non-Coca-Cola product, into the warehouse. Pl. Dep. 43-44. Plaintiff also testified Cribb had called Killer Kelly, a Black male "stupid" because he punched a hole in a truck door when he tried to use the forks of a forklift to pry open the door,

Plaintiff received a right-to-sue letter from EEOC dated May 15, 2012. *See* ECF No. 1-1 at 11-12. Plaintiff filed this action in state court on July 12, 2012, bringing claims for Race and Sex Discrimination in violation of Title VII and Race Discrimination in violation of 42 USC § 1981. Defendant removed it to this court September 14, 2012. ECF No. 1.

II.    Discussion

A.  Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

---

which had become jammed. *Id.* at 45-46. Plaintiff testified Cribb called Black male Corey Miller a "chimp," after Miller had called himself the "champ." *Id.* at 46-47. Plaintiff testified she never heard Cribb call her stupid. *Id.* at 44-45. At the hearing, Plaintiff's counsel indicated these remarks had not been included in Plaintiff's suit because they took place more than 300 days before Plaintiff filed her Charge with the EEOC. Accordingly, the court need not consider them in discussing the merits of Plaintiff's claim.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

B.  Title VII Discrimination Claims

Plaintiff brings both race and gender discrimination claims pursuant to Title VII. She also claims race discrimination pursuant to 42 U.S.C. § 1981. Plaintiff notes that the race and gender discrimination may be considered under the same proof scheme; she does not discuss them separately in her memorandum. Pl. Response in Opp. to Def.'s Mot. (Pl. Mem.) 12, ECF No. 39. As the parties acknowledge, courts utilize the same test and proof scheme for Title VII and § 1981. *See Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985) (applying Title VII burden-shifting proof scheme to actions brought pursuant to § 1981). Herein, the court considers Plaintiff's claims for race and gender discrimination simultaneously.  Unless otherwise indicated, the court focuses on Title VII case law.

A Title VII plaintiff may "avert summary judgment" through "two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). As the Fourth Circuit Court of Appeals explained in *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310 (4th Cir. 2005):

> A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. [*Hill*, 354 F.3d at 284.] Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

416 F.3d at 318 (additional citation information added).

Pursuant to the *McDonnell Douglas* burden-shifting framework, once plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to defendant to produce evidence

of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, Plaintiff does not present a mixed-motive claim; rather, she is proceeding under the *McDonnell Douglas* proof scheme. Pl. Mem. 12. To establish a prima facie case of race or gender discrimination, Plaintiff must prove the following four elements: (1) she was a member of a protected class (here, African American and female); (2) she suffered an adverse employment action; (3) at the time of the adverse action she was performing up to her employer's expectations; and (4) the circumstances gave rise to an inference of unlawful discrimination. *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011) (in failure-to-promote context). In a discriminatory discharge matter concerning the enforcement of employee disciplinary measures, the Fourth Circuit noted the inference of unlawful discrimination (factor four) could be established by showing that "other employees who were not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002).

Both parties acknowledge a four-pronged test as being required for establishing a prima facie Title VII discrimination claim. *See* Def. Mem. 12-13 (characterizing the fourth prong as requiring a showing that "other similarly situated employees who are not members of the protected class did not suffer the same adverse action."). Plaintiff indicates she must establish her prima facie case using the following elements:

> (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate job expectations; and (4) that the position remained open to or was filled by similarly situated qualified applicants outside the protected class.

*See* Pl. Mem. 12 & n.57 (citing 42 U.S.C.§ 2000e-2(a)(1), as well as case law regarding a Title VII case for a discriminatory ("hostile") work environment).[9] Elsewhere in her brief, Plaintiff cites a Fifth Circuit case and submits the following:

> To be successful in a differential treatment case the Plaintiff must present [evidence] either that she was replaced by someone not a member of her protected class or "was treated less favorably because of [her] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."

Pl. Mem. 14 (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (internal citations omitted)).[10]

The court notes that the exact standard to be used in establishing a prima facie case is flexible depending on the facts and claims alleged. *Ennis*, 53 F.3d at 58. In evaluating Defendant's Motion, the court considers the four-pronged test for establishing a prima facie case as both parties briefed and argued the Motion using such a test. Defendant argues Plaintiff cannot establish the third or fourth prongs of the test—that Plaintiff was not performing at Defendant's legitimate job expectations and that Plaintiff has not demonstrated other similarly situated employees outside of her protected classes did not suffer the same adverse action.

---

[9] At the hearing, Plaintiff's counsel confirmed Plaintiff is not pursuing a cause of action for harassment based on a hostile-work-environment claim.

[10] The court notes that the test in the Fifth Circuit case cited by Plaintiff also required a plaintiff to establish he "was qualified for the position at issue[.]" *Lee*, 574 F.3d at 259.

1. Prima Facie Case

    a. Was Plaintiff performing at Defendant's legitimate expectations at time of adverse action?

In determining whether an employee has met an employer's legitimate job expectations, it is the employer's perception that is relevant, not the employee's self-assessment. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). "The relevant time to evaluate [ ] an employee's performance is at the time of the adverse action." *Wells v. Briggs Constr. Equip. Inc.*, C/A No. 3:08-3634-JFA-PJG, 2010 WL 2991673, at *4 (D.S.C. May 12, 2010) (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005)), *adopted,* 2010 WL 2991681 (Jul. 28, 2010).

Defendant argues that Plaintiff cannot satisfy this element of establishing a prima facie case, noting Plaintiff's repeated violations of Defendant's attendance policy, her failure to clock-in for her shift on March 21, 2011, and her falsification of her arrival time that day. Def. Mem. 14.

In response, Plaintiff calls Defendant's argument "conclusory," and argues Defendant "fails and refuses to consider the actual testimony regarding the Plaintiff's employment." Pl. Mem. 16. The testimony to which Plaintiff then refers generally is Cribb's testimony regarding Donnie Jones, one of Plaintiff's comparators. *Id.* (citing Cribb deposition and noting Jones had "2 major safety violations and was not terminated for either."). Plaintiff also cites generally to exhibits 6 and 7 to her memorandum, indicating the exhibits provided evidence of "the terminat[ion] of two other individuals for falsification of time cards which occurred after the Defendant had notice of the Plaintiff's charge of discrimination." Pl. Mem. 16.

This argument misses the point of the third element of establishing a prima facie case— that Plaintiff was performing in accordance with Defendant's expectations at the time of her

termination. Rather, Plaintiff's argument seems to go to the fourth prong of establishing a prima facie case. The undersigned is of the opinion that Plaintiff has not set forth sufficient evidence to establish that she was performing up to Defendant's legitimate employment expectations at the time she was terminated. There is no factual dispute that Plaintiff violated Defendant's attendance policy with numerous instances of tardiness and unexcused absences.[11] In her deposition, Plaintiff did not dispute her prior CAs. *See* Pl. Dep. 108, 110-12, 115. Plaintiff has proffered no evidence that she was meeting Defendant's performance expectations at the time she was terminated. *See, e.g, Miles v. Dell, Inc.,* 429 F.3d at 485 (stating that the third factor of a Title VII prima facie case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action").

At the hearing, Plaintiff's counsel argued Plaintiff satisfied this prong of the prima facie case because she never admitted she intentionally falsified her time record. Pointing to her testimony that she "wasn't sure what time it was" when she arrived on March 21, 2011, Pl. Dep. 103, Plaintiff argued that, were it not for the claimed falsification she did not believe she would have been terminated. In making this argument, counsel indicated Plaintiff was no longer on probation for her prior CAs because the CAs that were more than a year old would have "fallen off." She further noted Cribb's testimony that he did not consider previous discipline when he made the decision to terminate Plaintiff. *See* Cribb Dep. 32, ECF No. 39-7.

Plaintiff's argument is insufficient to carry her burden here. Even if the court were to consider the argument of counsel as Plaintiff's own testimony that she was performing her job

---

[11] The only potential factual issue Plaintiff raises concerning her prior CAs is that Defendant's Motion considered all of Plaintiff's prior CAs in terminating her in 2011. Pl. Mem. 7. Plaintiff then notes Cribb's testimony to the contrary—that he did not consider the prior CAs in his decision to terminate Plaintiff. *Id.* In its Reply, Defendant agreed Plaintiff had not been terminated based on a progressive discipline policy. Def. Reply 2-3.

satisfactorily, such evidence is insufficient to satisfy Plaintiff's prima facie burden of showing she was meeting Defendant's legitimate expectations. *See King*, 328 F.3d at 149 (noting plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether she was meeting employer's expectations in a race discrimination case).

Based on this record, even considering all evidence in the light most favorable to Plaintiff, Plaintiff has not carried her burden of proving a prima facie case because she has not shown she was meeting Defendant's legitimate expectations at the time of termination. The undersigned is of the opinion that no reasonable jury could find Plaintiff was meeting expectations at the time she was terminated.

Nonetheless, the court notes that some Fourth Circuit cases considering claims of disparate discipline using the *McDonnell Douglas* method of proof do not include an element of meeting expectations. *See, e.g.*, *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 336 (4th Cir. 2011) (setting out the following factors necessary for a plaintiff claiming disparate discipline to establish a prima facie case: (1) she is a member of a protected class under Title VII; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) she suffered more severe discipline for her misconduct as compared to those employees outside the protected class). Plaintiff focuses much of her argument on her claim that she was discriminated against by being disciplined differently from others not in her protected classes.[12] Accordingly, the court now considers whether similarly situated employees outside of Plaintiff's protected classes were treated differently.

---

[12] In her responsive memorandum, Plaintiff set out allegations regarding several other ways in which she believed Defendant discriminated against her by treating her differently. *See* Pl. Mem. 7, 8; *see, e.g.,* Pl. Dep. 24 (claiming she was given more of a workload than White males); Pl. Dep. 55 (claiming she lost her assistant); Pl. Dep. 62 (claiming she was required to load racks); Pl. Dep. 67 (claims she was not promoted through the supervisory chain). At the hearing,

b. Was Plaintiff subject to more severe discipline than similarly situated employees outside her protected classes?[13]

Defendant also argues Plaintiff cannot establish that she was subjected to more severe discipline than similarly situated employees not members of her protected classes. "To be similarly situated, a 'plaintiff must establish that other employees were similarly situated in all relevant respects; that they dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Johnson v. City of N. Myrtle Beach*, No. 4:09-2530-TLW-TER, 2012 WL 848038, at *8 (D.S.C. Jan. 25, 2012) (quoting *Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006), *adopted*, 2012 WL 847276 (Mar. 13, 2012). In determining whether the conduct of a plaintiff is comparable in seriousness to that of employees outside the protected class ("comparators"), a court is to "consider the gravity of the offenses on a relative scale." *Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985) (internal quotation omitted). Exact similarity between offenses is not required. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (noting

---

Plaintiff's counsel conceded these allegations were too remote in time to be considered as part of her discrimination claim. Accordingly, the court need not consider these allegations herein.

[13] Plaintiff also briefly argues she has satisfied her prima facie burden by demonstrating she was a member of a protected class, she suffered an adverse employment action, she was performing at Defendant's legitimate expectations, and "the position was filled by a less qualified individual outside the Plaintiff's protected class." Pl. Mem. 15-16. Plaintiff cites to no record evidence to support this argument. At the hearing, Plaintiff's counsel informed the court that Cribb testified in his deposition that her prior position was filled by a male driver who did not have Plaintiff's experience with inventory. Counsel noted she was unsure of this individual's race. At best, counsel's argument could be considered as to Plaintiff's claim of gender discrimination. However, counsel did not reference a specific portion of Cribb's deposition to support her argument, nor is the court aware of any record evidence regarding Plaintiff's replacement or his qualifications. *See Celotex*, 477 U.S. at 323 (nonmoving party must provide specific evidence). Plaintiff has not satisfied her burden of proving her prior position was filled by a less qualified person from outside her gender (or race). In the event this element is considered, Plaintiff would also be required to demonstrate that she was meeting Defendant's legitimate expectations at the time she was terminated.

the "reality that the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same circumstances.").

In support of its Motion, Defendant argues Plaintiff has not identified "a similarly situated individual outside her protected classes who received more favorable treatment after being perpetually tardy, arriving late and failing to clock in for a scheduled shift, and then providing a false arrival time which surveillance footage directly disproved." Def. Mem. 15. Defendant points out that Cribb terminated a male employee, James Davis, for falsifying his time records, as well. Cribb Dep. 16, 41, ECF No. 31-3. Cribb testified Davis had left the facility while on the clock, which meant Davis falsified his time records. *Id.* at 41. Davis was terminated on September 7, 2012. Cribb did not recall whether he was aware Plaintiff had filed a discrimination charge against Defendant at the time he terminated Davis. *Id.*

Plaintiff contends that the record contains evidence of differential discipline sufficient to establish her prima facie gender and race discrimination case. Pl. Mem. 17. Plaintiff offers evidence regarding white male employee Donnie Jones, who received five CAs, including two safety violations during the "same amount of time." Pl. Mem. 17. Presumably, Plaintiff is arguing that Jones received five CAs in the same amount of time she received the six CAs discussed above and was not treated as harshly as Plaintiff was. Pl. Mem. 17. Plaintiff cites to Cribb's testimony regarding Jones's CAs, focusing on Cribb's testimony that some of Jones's CAs had "fallen off and discipline had started over." Pl. Mem. 17, ECF No. 39-7 at 15-16 (Cribb Dep. 34, 35), 27-31 (CAs issued to Jones). Plaintiff argues that, in Defendant's Motion for Summary Judgment, Defendant "does not consider that any of Plaintiff's disciplines have fallen off." Pl. Mem. 17.

16

4:12-cv-02647-RBH     Date Filed 12/31/13     Entry Number 50     Page 17 of 23

Nothing Plaintiff argues in her brief demonstrates she was treated or disciplined less favorably than Jones. Cribb testified he considered only the events following Plaintiff's failure to clock-in on March 21, 2011 in making the decision to terminate her for falsification of records. Cribb. Dep. 32, ECF No. 39-7. The court is aware of no record evidence indicating otherwise.[14] In addition, even considering the relative number of CAs issued to Jones and to Plaintiff does not establish disparate treatment based on similarly situated individuals. As Cribb testified, there is not a particular number of CAs that an employee must receive to be terminated from employment. Cribb Dep. 20. Rather, it depends upon what the employee did. *Id.*

Plaintiff also points to records of male[15] employee Chip Sanders. Pl. Mem. 17 (citing ECF No. 39-8). Plaintiff argues Sanders was placed on probation in December 2011 and told at that time he would be terminated. However, Plaintiff argues that "when receiving discipline in January and February when the Plaintiff received discipline the individual male [Sanders] was not terminated." Pl. Mem. 17 (citing Sanders's CAs, found at ECF No. 39-8). In reviewing the CAs Sanders received, the court notes that the CA indicating he was "on probation" and would be terminated if he further violated company policy or procedure was issued December 2009, not 2011. *See* ECF No. 39-8 at 2. In that CA, it was noted that Sanders would have two CAs expire in March 2010. *Id.* The CA that placed him on probation was over a year before the CAs he received in January and February 2011. This, then, is an example of CAs "falling off" after one

---

[14] Plaintiff testified that Jones was treated differently in that he committed a safety violation that put another employee's life in danger but was not written-up for that violation. Pl. Dep. 78-80, ECF No. 29-2. Plaintiff abandoned that argument, presumably upon learning from Defendant that Jones did receive a CA for that incident. *See* ECF No. 31-1 at 2 (Jones's Step-2 CA, which skipped Step 1 because of the severity of the accident); ECF No. 31-1 also includes other CAs issued to Jones.

[15] Plaintiff refers to this employee as "male," but makes no reference to his race.

year. This is not evidence of a male employee having been treated more favorably than Plaintiff.[16]

In setting out facts in her memorandum opposing Defendant's Motion, Plaintiff also names Jammie Harris, an African-American male whom Plaintiff submits was disciplined differently from her because he remained employed after several absences, bragged about drug use but was not disciplined, and mooned his supervisors. Pl. Mem. 6-7 (citing to Pl. Dep. 80, 89). Plaintiff does not include argument explaining how this employee's behavior bolsters her case and could be considered to have abandoned this argument. Defendant points out that this employee's name is Jami Harrelson and notes Plaintiff testified that Harrelson had bragged about using drugs and alcohol at night before coming into a morning shift, and that she had never reported his behavior. Def. Mem. 10 (citing Pl. Dep. 90). Defendant describes Harrelson as being Caucasian. Def. Mem. 10. Defendant also notes Harrelson was terminated for mooning others. Def. Mem. 10 (citing Cribb Dep. 30 and ECF No. 31-2 (CA terminating Harrelson for mooning employees).

In setting out facts in her brief, Plaintiff referenced a Caucasian male employee named "Nick," submitting that he had worked under the influence of drugs and bragged about it. Pl. Mem. 7. However, Plaintiff does not further discuss Nick as one similarly situated. Further, Defendant notes Plaintiff's testimony that this alleged behavior took place over a year before her termination and that she had never reported this conduct to anyone. Def. Mem. 10 (citing Pl. Dep. 91). This evidence does not assist Plaintiff in setting forth her prima facie case.

---

[16] To the extent Plaintiff is arguing she was treated less favorably than others she references because all of her prior CAs were considered in Defendant's termination decision and they had not "fallen off," *see* Pl. Mem. 7, the undisputed record evidence is that decisionmaker Cribb considered only the events of March 21, 2011 in making the termination decision. *See* Cribb Dep. 32, ECF No. 39-7.

In Plaintiff's deposition, she testified she was treated differently when she was fired for falsifying documents regarding the time she reported to work because, "to [her] knowledge, the security camera hadn't been checked to see what time anyone else came to work or that the time that they gave to the supervisor was correct." Pl. Dep. 81. Other than Plaintiff's supposition, she has provided no evidence to demonstrate surveillance tapes had not been reviewed to corroborate other employee's statements regarding when they had arrived.

At the hearing, the court asked Plaintiff's counsel whether the comparators she provided had committed actions that could be cause for immediate termination. Counsel responded that there was a list of terminable offenses attached as an exhibit to Cribb's deposition. However, the court is unable to locate any such document in the record.

As the court noted in *Duggan v. Sisters of Charity Providence Hospitals*, 663 F. Supp. 2d 436 (D.S.C. 2009), "[a] plaintiff charging an employer with disparate discipline must show the decisionmaker 'consciously overlooked' misconduct by others outside the protected class 'when he disciplined [plaintiff] more severely.'" 663 F. Supp. 2d at 463 (quoting *Moreland v. Miami-Dade Cnty.*, 255 F. Supp. 2d 1304, 1313 (S.D. Fla. 2002) (internal quotation omitted)). Plaintiff's proffered comparators are not similarly situated, nor has Plaintiff demonstrated Cribb, as decisionmaker, "consciously overlooked" similar, or equally severe, misconduct by others when disciplining Plaintiff by terminating her.

The undersigned recommends Plaintiff's claims of race and gender discrimination be dismissed because Plaintiff cannot establish a prima facie case of race and/or gender discrimination. Plaintiff has not established she was performing at Defendant's legitimate expectations at the time she was terminated. Additionally, she has not demonstrated disparate

discipline was meted out to an employee outside her protected classes. Defendant's Motion for Summary Judgment should be granted in full.

2.  Pretext

Defendant maintains Plaintiff's termination for arriving late to work and providing a false time of arrival to both Cribb and Causey were legitimate reasons for Plaintiff's termination. Def. Mem. 19.  Here, assuming Plaintiff established a prima facie case for retaliation, the undersigned finds she has not set forth sufficient evidence to demonstrate Defendant's explanation for her termination was merely pretextual.  *See Atkins v. Holder,* 529 F. App'x 318, 320 (4th Cir. 2013) (noting if a plaintiff puts forth a prima facie, defendant must offer a nondiscriminatory explanation for the termination and then the burden of proof returns to plaintiff to show the employer's proffered explanation is pretextual) (Title VII); *Yashenko v. Harrah's Casino*, 446 F.3d 541, 551 (4th Cir. 2005) (same in retaliatory discharge context). As Defendant notes, courts are not to second-guess an employer's decision on human resources matters, so long as such decisions are not based on an unlawful reason. *See* Def. Mem. 18-19. "Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity. . . ." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). "[I]t is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). Plaintiff cannot show that Defendant's stated reason for terminating her was not the real reason for her discharge.

In her brief opposing Defendant's Motion, Plaintiff again relies on "evidence of discrimination through differential treatment" that she proffered in support of her prima facie

case, arguing such evidence may also provide evidence her employer's proffered reason for termination was pretextual. Pl. Mem. 18-19 (quoting *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir. 2001)). Abstractly, the court does not disagree that evidence presented in support of one's prima facie claim of termination can also be considered in determining whether an employer's stated reason for termination was merely pretextual. *See generally, Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 516 (4th Cir. 2006)) (noting flexibility of *McDonnell Douglas* framework and finding "no impermeable barrier" preventing parties from using the same evidence at different stages of the framework). This general principle does not assist Plaintiff here, however. As fully discussed above, Plaintiff has not provided sufficient evidence to indicate a reasonable juror could determine she was disciplined unfairly in comparison with other employees not in her protected classes.

Additionally, Plaintiff argued at the hearing that she was terminated for falsification of her time records but that evidence demonstrates she did not know she had falsified her time records. Counsel pointed to Plaintiff's deposition testimony that she "was not sure" what time it was when she arrived on March 21, 2011, "because it was dark[,] . . . early in the morning[, and she] was just trying to get in the door, for one thing." Pl. Dep. 103. Plaintiff argued that she never admitted she had falsified the documents.[17] To the extent Plaintiff seeks to have the court deny Defendant's Motion for Summary Judgment based on a supposed issue of fact as to whether Plaintiff intentionally falsified her arrival time on March 21, 2011, such an argument is unavailing. Unlike some civil disputes, in which *any* genuine issue of material fact may be sufficient to defeat summary judgment, *see Anderson*, 477 U.S. at 249, Plaintiff's discrimination

---

[17] Although Plaintiff's counsel made this argument in response to a question regarding the prima facie case, in construing all facts and available inferences in Plaintiff's favor, the court also considers it here.

claim is considered based on the burden-shifting framework set forth above. Defendant has unquestionably set forth a legitimate, non-discriminatory reason for terminating Plaintiff. Accordingly, the burden is shifted back to Plaintiff to show that Defendant's proffered explanation is pretextual. As noted above, the court is not to determine whether the proffered reason "was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette*, 133 F.3d at 299. In order to prove pretext a plaintiff can show a defendant's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [] discrimination." *See Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (internal quotation marks omitted). Here, the court finds Plaintiff has not established pretext. Defendant's Motion should be granted.

Further, Plaintiff argues that "factual issues" exist as to other individuals terminated for falsifying time records. Pl. Mem. 8. Citing generally to exhibits 4, 5, and 6 to her memorandum, Plaintiff submits that at the time of the termination of these (unnamed) individuals, Defendant was "aware of the Plaintiff's charge of discrimination." Pl. Mem. 8. Plaintiff provides no analysis of who these individuals are, nor does she explain what "issues of fact" would preclude summary judgment. Elsewhere in her memorandum, Plaintiff generally attempts to distinguish the "paperwork" presented by Defendant of others terminated for falsification of records. Pl. Mem. 17. Plaintiff argues Cribb did not supervise these individuals and they were terminated after Defendant had responded to Plaintiff's Charge of Discrimination. *Id.* Accepting this evidence at face value, the undersigned finds it does not present any "issues of fact" that would preclude summary judgment, nor does it provide evidence that Defendant's termination of Plaintiff was for a wrongful, discriminatory reason. Defendant's Motion for Summary Judgment should be granted.

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment, ECF No. 29, be *granted* and Plaintiff's action be dismissed.

IT IS SO RECOMMENDED.

December 31, 2013                                    Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**